**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| JOSHUA PROPST, | ) | CASE NO. 5:20-CV-01755-PAG |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Joshua Propst ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On April 12, 2017, Claimant filed an application for SSI. (ECF No. 13, PageID #: 257). His amended alleged onset date is April 12, 2017. (ECF No. 13, PageID #: 257). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 13, PageID #: 198). On September 5, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert

testified. (ECF No. 13, PageID #: 114). On September 20, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 13, PageID #: 82). The ALJ's decision became final on July 7, 2020, when the Appeals Council declined further review. (ECF No. 13, PageID #: 76).

On August 10, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 16, 17). Claimant asserts the following assignments of error:

> (1) The ALJ failed to properly evaluate the consistency of the Claimant's allegations
>
> (2) The ALJ failed to properly apply SSRs 16-3 and 96-8p
>
> (3) The ALJ failed to provide an accurate and logical bridge between the evidence and his conclusions

(ECF No. 14 at 1, 16).

## III.  Background

### A.  Relevant Medical Evidence

### 1.  Physical Impairments

Claimant first sought treatment for back pain in July 2016. (ECF No. 13, PageID #: 347). Claimant's primary care physician, Dr. Schmeiser, diagnosed degenerative disc disease at L5 of the lumbar spine and low back pain. (ECF No. 13, PageID #: 351). He prescribed physical therapy. (ECF No. 13, PageID #: 351). Claimant attended physical therapy with Dr. V. Michael Krutel and alleged burning and tingling back pains. (ECF No. 13, PageID #: 322). An x-ray from August 2016 demonstrated moderately severe narrowing of the T11-12 vertebrae and T12-L1. (ECF No. 13, PageID #: 351). In September 2016, Claimant reported that physical therapy had not helped, but was not in acute distress and did not appear in pain. (ECF No. 13, PageID #: 353). Later that month, Dr. Schmeiser observed that Claimant had an antalgic gait and had significant pain with range of

motion of the lumbar spine. (ECF No. 13, PageID #: 357). Claimant had a positive straight leg raise on the right and had difficulty standing from a seated position. (ECF No. 13, PageID #: 357). In November 2016, magnetic resonance imaging ("MRI") revealed moderate facet arthropathy, "moderate to severe narrowing of the left lateral recess," and an irregular circumferential disc bulge at L3-L4 which may have been associated with some nerve root displacement. (ECF No. 13, PageID #: 345–46).

Claimant continued to report severe pain, ranking it as a 10/10 in December 2016. (ECF No. 13, PageID #: 359). On examination, Dr. Schmeiser noted that Claimant did not appear in pain. (ECF No. 13, PageID #: 359). He also observed that Claimant walked with an antalgic gait, had trouble standing from a seated position, and had restrictions in lumbar spinal range of motion. (ECF No. 13, PageID #: 360). Claimant had a positive straight leg raise on the right. (ECF No. 13, PageID #: 360). Dr. Schmeiser referred Claimant to Dr. Douglas Ehrler, an orthopedic surgeon, for evaluation. (ECF No. 13, PageID #: 360, 467). Dr. Ehrler then examined Claimant. (ECF No. 13, PageID #: 468). He reported that Claimant was balanced and upright. (ECF No. 13, PageID #: 469). Claimant's straight leg raising was negative and his sensation and reflexes were normal. (ECF No. 13, PageID #: 469). Dr. Ehrler also reviewed Claimant's MRI and diagnosed herniated disc/foraminal stenosis on the left L4-5. (ECF No. 13, PageID #: 467). Dr. Ehrler planned to proceed with non-operative treatment. (ECF No. 13, PageID #: 469).

In January 2017, Dr. Schmeiser observed that Claimant walked with a normal gait and balance. (ECF No. 13, PageID #: 363). In June 2017, Claimant complained of foot pain and pain when walking. (ECF No. 13, PageID #: 365). Claimant's x-rays came back normal, and his physical examination revealed a normal spine and normal joints. (ECF No. 13, PageID #: 365–66). Dr. Schmeiser again noted normal gait and balance later that month. (ECF No. 13, PageID #:

369). In both September 2017 and January 2018, Claimant walked with a normal gait and balance. (ECF No. 13, PageID #: 372, 451).

In April 2018, Dr. Mark Vogelsang conducted a consultative physical examination. (ECF No. 13, PageID #: 394). Claimant complained of depression and low back pain. (ECF No. 13, PageID #: 324). He reported his low back pain was a 6 or 7 out of 10 and had difficulty with heavy lifting and walking. (ECF No. 13, PageID #: 395). Claimant stated that he occasionally used a cane but did not have one with him at the examination. (ECF No. 13, PageID #: 395). He could sit for 45 minutes, stand for 50 minutes, and walk about ¼ mile before having pain. (ECF No. 13, PageID #: 395). Claimant also stated that he could drive a car and lift and carry 20 pounds. (ECF No. 13, PageID #: 395). Upon examination, Claimant did not have tenderness to palpation of the back and had a good range of motion in the neck. (ECF No. 13, PageID #: 396). His muscle strength was full, his straight leg raising was negative, and he walked without a limp. (ECF No. 13, PageID #: 397). He had some left shoulder pain. (ECF No. 13, PageID #: 397). In a follow-up later in April, Dr. Schmeiser noted that Claimant did not appear in pain. (ECF No. 13, PageID #: 453). He observed, however, that Claimant walked with an antalgic gait and used a cane. (ECF No. 13, PageID #: 454). X-rays showed "moderate" degenerative disc disease. (ECF No. 13, PageID #: 454). Dr. Schmeiser again referred Claimant to an orthopedic surgeon. (ECF No. 13, PageID #: 454).

In May 2018, Dr. Mehr Siddiqui reviewed the medical record for the state and opined that Claimant could perform a range of light work. (ECF No. 13, PageID #: 163). Shortly after, Claimant reported severe pain to his orthopedic surgeon, Dr. Nicole D'Amico. (ECF No. 13, PageID #: 392). He stated that he was unable to finish physical therapy due to pain. (ECF No. 13, PageID #: 392). On examination, Claimant was not in acute distress and had normal sensation,

reflexes, and gait, but used a cane. (ECF No. 13, PageID #: 464). His posture was balanced and upright. (ECF No. 13, PageID #: 464). He had muscle weakness on the left side and positive straight left leg raising. (ECF No. 13, PageID #: 464). An MRI revealed "moderate left neural foraminal narrowing with some disc encroachment on the exiting foraminal nerve roots" at L3-4. (ECF No. 13, PageID #: 464–65).

In June 2018, Claimant reported pain was a 2 out of 10 and, at its worst, went up to a 5 out of 10. (ECF No. 13, PageID #: 471). Dr. Ehrler examined Claimant and noted no acute distress, and that Claimant had a normal gait and was balanced and upright. (ECF No. 13, PageID #: 472–73). Claimant's sensation and reflexes were normal. (ECF No. 13, PageID #: 473). Claimant's motor strength was reduced in the lower extremities. (ECF No. 13, PageID #: 473). However, Dr. Ehrler noted an over-exaggerated reaction and lack of effort. (ECF No. 13, PageID #: 473). Dr. Ehrler recommended pain management such as epidural injections and not surgery. (ECF No. 13, PageID #: 474).

In July 2018, Dr. Tim Sable saw Claimant for pain management. (ECF No. 13, PageID #: 507). Dr. Sable noted tenderness in the spine and a fair range of motion. (ECF No. 13, PageID #: 509). He observed that Claimant had an antalgic gait, balance problems, and used a cane. (ECF No. 13, PageID #: 509). Claimant's sensory and motor examination were otherwise normal. (ECF No. 13, PageID #: 509). Straight leg testing was negative, and Claimant had no significant weakness. (ECF No. 13, PageID #: 509). Dr. Sable prescribed lumbar steroidal injections which were administered on July 20, 2018. (ECF No. 13, PageID #: 509, 594). Later that month, a state agency consultant reviewed the medical record and opined that Claimant could perform a range of light work. (ECF No. 13, PageID #: 182). In August 2018, Dr. Paul Scheatzle examined Claimant and noted that Claimant had a reduced range of motion of the back and decreased heel and toe

walking on the left. (ECF No. 13, PageID #: 513). He opined that Claimant could work with light duty restrictions. (ECF No. 13, PageID #: 513). Claimant received another steroidal injection in September 2018. (ECF No. 13, PageID #: 584).

In October 2018, Claimant complained to Dr. Jeffrey Tharp about worsening back pain. (ECF No. 13, PageID #: 557). Dr. Tharp examined Claimant and noted that he stood with difficulty, walked with an antalgic gait, and his range of motion of the back was reduced. (ECF No. 13, PageID #: 559). Dr. Tharp also observed that Claimant had decreased reflexes and sensation. (ECF No. 13, PageID #: 559). Claimant's motor strength was full in the upper and lower extremities. (ECF No. 13, PageID #: 559). Dr. Tharp assessed that Claimant's MRI showed mild degenerative disc disease at the L4 level, with facet arthropathy. (ECF No. 13, PageID #: 559). Dr. Tharp offered surgery. (ECF No. 13, PageID #: 560). Later that month, Claimant underwent back surgery to decompress the L3 and L4 nerve roots on the left and a discectomy at L3-L4. (ECF No. 13, PageID #: 549).

In November 2018, Claimant reported that his left leg pain had resolved but he still had some left buttock and back pain. (ECF No. 13, PageID #: 608). Overall, he stated he was 40% improved. (ECF No. 13, PageID #: 608). Dr. Tharp opined that Claimant would eventually be able to walk with a normal gait. (ECF No. 13, PageID #: 609). In December 2018, Claimant reported improvement but told Dr. Tharp that he recently fell and was dealing with a flareup. (ECF No. 13, PageID #:605). Dr. Tharp examined Claimant and noted a slow antalgic gait and decreased reflexes. (ECF No., PageID #: 606). Claimant continued with physical therapy and was observed to have a slightly antalgic gait with use of a cane. (ECF No. 13, PageID #: 617, 620, 623).

In February 2019, computerized tomography ("CT") showed some soft tissue attenuation at L3-L4. (ECF No. 13, PageID #: 650–51). Clamant followed up with Dr. Tharp in March 2019.

(ECF No. 13, PageID #: 652). Claimant reported that his pain was a 9 out of 10 and he felt no improvement since his surgery. (ECF No. 13, PageID #: 652). Dr. Tharp observed that Claimant walked independently with a slow antalgic gait. (ECF No. 13, PageID #: 654). An MRI revealed a "recurrent disc herniation and neuroforamen causing lateral recess and foraminal stenosis." (ECF No. 13, PageID #: 654). There was moderate right and severe left neural foraminal narrowing at L3-4. (ECF No. 13, PageID #: 656). In March 2019, Claimant followed up with Dr. Schmeiser. (ECF No. 13, PageID #: 662). Dr. Schmeiser noted that Claimant had a normal gait and station. (ECF No. 13, PageID #: 663).

In April 2019, Claimant saw a new orthopedist, Dr. Christina Cheng. (ECF No. 13, PageID #: 696). Claimant reported pain as a 9 out of 10. (ECF No. 13, PageID #: 696). Dr. Cheng noted an antalgic gait with a cane and moderate pain to palpation in the spine. (ECF No. 13, PageID #: 697). Claimant's straight leg testing was negative, and his sensation was intact. (ECF No. 13, PageID #: 697). Claimant's motor strength was full in the right leg and 4 out of 5 in the left leg. (ECF No. 13, PageID #: 697). Dr. Cheng reviewed Claimant's most recent MRI and noted moderate foraminal stenosis secondary to a broad disc bulge. (ECF No. 13, PageID #: 698). Dr. Cheng took x-rays that revealed mild to moderate degenerative changes. (ECF No. 13, PageID #: 700). Dr. Cheng suggested trying additional non-operative treatments. (ECF No. 13, PageID #: 698). Claimant tried a Medrol Dosepak and physical therapy. (ECF No. 13, PageID #: 819). Upon follow-up with Dr. Cheng in June 2019, Claimant reported no pain relief, and his physical examination was largely unchanged. (ECF No. 13, PageID #: 819–20). Dr. Cheng suggested Claimant receive another steroid injection and, if that did not work, possibly surgery. (ECF No. 13, PageID #: 821). However, she also expressed concern about surgery and the possibility of a nerve root injury or fracture due to scar tissue from the previous surgery. (ECF No. 13, PageID #:

821). Claimant reported that he was scheduled to undergo surgery in Summer 2019. (ECF No. 13, PageID #: 91).

### 2. Mental Impairments

Throughout 2017, Claimant also received mental health treatment. His visits originally focused on alcohol abuse and attempts at sobriety though he also alleged depression and anxiety. (ECF No. 13, PageID #: 404). In early 2017, he reported anxiety and violent thoughts toward others. (ECF No. 13, PageID #: 768). In September 2017, Claimant stopped drinking. (ECF No. 13, PageID #: 747).

In January 2018, Cheryl Benson-Blankeship, Ph.D, examined Claimant for a consultative psychological evaluation. (ECF No. 13, PageID #: 387). Claimant reported that he had been sober since 2017 but he struggled with alcoholism, up and down moods, and poor concentration. (ECF No. 13, PageID #: 387–78). In February 2018, Claimant reported that, after five months sober, he felt great and his relationship with his family had significantly improved. (ECF No. 13, PageID #: 423). He was content with his treatment and his mood and sleep were stable. (ECF No. 13, PageID #: 423). The psychiatrist noted that Claimant's demeanor was average, he was cooperative, had normal eye contact and clear speech, and had logical thoughts. (ECF No. 13, PageID #: 424–25). Claimant continued to report normal sleep and mood in March 2018. (ECF No. 13, PageID #: 429). His mental status examinations were unchanged. (ECF No. 13, PageID #: 430–31).

In April and June of 2018, Claimant reported frustration with the disability process and poor moods. (ECF No. 13, PageID #: 435, 496). His psychiatrist increased his Zoloft and gabapentin prescriptions. (ECF No. 13, PageID #: 439). In July 2018, Claimant stated that he was managing his anxiety. (ECF No. 13, PageID #: 535). In August 2018, Claimant got into an argument with his psychiatrist about filling out disability forms and walked out of his appointment. (ECF No. 13,

PageID #: 529). His psychiatrist noted that Claimant was upset, irritable, aggressive, hostile, and preoccupied. (ECF No. 13, PageID #: 531).

Throughout the end of 2018 and beginning of 2019, Claimant was repeatedly observed as hostile, aggressive and preoccupied. (ECF No. 13, PageID #: 518–19, 525, 795–96, 802–03). In September 2018, Claimant ranked his depression as a 7 out of 10 and his anxiety as an 8 out of 10. (ECF No. 13, PageID #: 523). In October, Claimant reported anxiety as a 10 out of 10. (ECF No. 13, PageID #: 516). In April 2019, Plaintiff stated that his depression and anxiety were improved but he catastrophized about his physical health. (ECF No. 13, PageID #: 716). Claimant then reported heightened anxiety in July 2019. (ECF No. 13, PageID #: 703). His psychiatrist reported normal MSE findings throughout April, June, and July 2018. (ECF No. 13, PageID #: 704, 711–12, 718–19).

### B. Opinion Evidence at Issue

#### 1. State Agency Medical Consultants

In May 2018 and June 2018, two state agency consultants opined that Claimant could perform light work with certain limitations. (ECF No. 13, PageID #: 157–63, 176–82). They also opined that Claimant had moderate limitations in all of his mental functional domains. (ECF No. 13, PageID #: 157–63, 176–82). Both opinions were given before Claimant required his first surgery. The ALJ was persuaded by their opinion regarding Claimant's physical limitations, stating that it was "supported by the totality of the evidence, which contains predominately benign objective findings, and is consistent with his daily life of being able to mostly live independently with his elderly grandmother." (ECF No. 13, PageID #: 91). However, he was not persuaded by their findings regarding Claimant's mental health. He stated that "[t]hey did not support their opinion with any basis or explanation, and their opinion is not consistent with the claimant's daily

activities, which indicate that the claimant has only mild limitations in understanding, remembering, or applying information and only mild limitations in adapting or managing oneself." (ECF No. 13, PageID #: 92).

### 2.  Medical Consultant — Mark Vogelsang, M.D.

In April 2018, Dr. Vogelsang conducted a consultative physical examination. (ECF No. 13, PageID #: 394). He assessed that Claimant suffered from obesity, hypertension, a history of depression and alcohol problems, and low back pain. (ECF No. 13, PageID #: 397). Dr. Vogelsang opined that Claimant might be able to tolerate a sedentary job with occasional light lifting. (ECF No. 13, PageID #: 397). He stated that Claimant might need to rest his back periodically during the day and might have to avoid bending or twisting. (ECF No. 13, PageID #: 397). Dr. Vogelsang wished to see notes from Claimant's orthopedic surgeon and physical therapist. (ECF No. 13, PageID #: 397).

The ALJ was not persuaded by this opinion. He stated:

> [Dr. Vogelsang's] opinion is not supported by his own report, which documented his observations, interactions, and physical examination of the claimant, as the report supported that the claimant can perform light work given the report[ed] findings of normal strength, normal reflexes and sensation, decreased range of motion of the lumbar spine, but otherwise normal range of motion, negative straight leg raise testing, no muscle spasm or muscle atrophy, and him not having a cane, but was able to walk without any limp. The uncertainty of his opinion is consistent with his additional statements in the report of wanting more information, such as him noting that, "… it would be nice to have a note from the Crystal Clinic orthopedic surgeon regarding his impression of the lower back pain. It may also be helpful to have the notes from the physical therapist regarding his treatment back in 2015."

(ECF No. 13, PageID #: 92).

### 3.  Psychological consultant — Cheryl Benson-Blankenship, Ph.D

In  January  2018,  Dr.  Benson-Blankenship  performed  a  consultative  psychological

evaluation. (ECF No. 13, PageID #: 387). Dr. Benson-Blaneknship opined that Claimant would

have some difficulties consistently applying instructions, completing multi-step tasks, and in social

interactions. (ECF No. 13, PageID #: 391).

The ALJ was not persuaded by this opinion, reasoning:

> The opinion is not supported by the consultant's belief of the
> claimant having problems with his "alcohol recovery" given that the
> claimant had already been sober for over 4 months when this opinion
> was provided and it was noted that the claimant was making great
> progress, was attending AA meetings, and had a sponsor. Also, the
> opinion is not consistent with the claimant's lifestyle, which is
> documented throughout the report, as the opinion overstates the
> claimant's limitations given that he has a long-term girlfriend whom
> he lives with in his grandmother's basement, is able to live with his
> grandmother who is 89 years old, has a driver's license, is able to
> perform self-care tasks, clean, grocery shop, cook, handle his own
> money, and take care of a dog.

(ECF No. 13, PageID #: 92).

### 4. Paul T. Scheatzle, DO

In August 2018, Dr. Scheatzle examined Claimant. (ECF No. 13, PageID #: 512). He

opined that Claimant could work with light duty work restrictions. (ECF No. 13, PageID #: 513).

He stated that claimant could lift up to 20 pounds occasionally and 10 pounds more frequently.

(ECF No. 13, PageID #: 513). He noted that Claimant could stand occasionally and sit frequently

with change of positions every thirty minutes. (ECF No. 13, PageID #: 513).  He concluded that

Claimant could not climb, crawl, or bend and twist. (ECF No. 13, PageID #: 513). The ALJ was

not persuaded by Dr. Scheatzle's opinion. He explained:

> The opinion is not supported by his own report's documented
> findings from the physical examination that he performed on the
> claimant on August 14, 2018. The findings noted muscle spasm,
> decreased range of motion, reflexes that are absent heel cords, and
> the claimant ambulating with a straight cane, but also noted that he
> has normal motor strength, normal muscle bulk, normal
> coordination, normal sensation, and negative straight leg tests,

11

which supports that the claimant can perform light work. Also, the opinion is not consistent with the mostly normal examination results throughout the record, such as at Exhibit 21F/5.

(ECF No. 13, PageID #: 92–93).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: Lumbar degenerative disc disease, status post surgery; post-traumatic stress disorder (PTSD); major depression; and anxiety disorder (20 CFR 416.920(c)) (Hearing Testimony, and Exhibits 1E, 4E, 14E, and 1F-34F).

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), with additional limitations, as follows: The claimant cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid workplace hazards, such as unprotected heights or exposure to dangerous moving machinery; limited to only simple, routine tasks that do not involve arbitration, negotiation, or confrontation; cannot direct the work of others or be responsible for the safety or welfare of others; cannot perform piece-rate work or assembly-line work; and limited to occasional interaction with others.

(ECF No. 13, PageID #: 89).

## V.  Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Claimant raises three issues on appeal. First, he argues that the ALJ failed to properly assess Claimant's credibility and improperly discounted his allegations regarding his symptoms, in violation of SSR 16-3P—the ruling explaining how to evaluate a claimant's allegations. Second, Claimant alleges that the ALJ did not follow SSR 96-8p—the ruling explaining how to properly assess the RFC. More specifically, in regard to both the first and second issue, Claimant suggests that the ALJ mischaracterized certain evidence and failed to discuss the inconsistencies between the medical evidence supporting Claimant's allegations and the ALJ's conclusions. Third, Claimant asserts that the ALJ failed to build a logical bridge between the evidence and his conclusions when determining Claimant's RFC. In making these arguments, Claimant breaks his discussion into two parts, first discussing the ALJ's analysis of his physical impairments and then discussing the analysis of his mental impairments. The Court will do the same. The Court will first consider the ALJ's RFC determination regarding Claimant's physical impairments and then move on to the discussion of Claimant's mental impairments. Within each discussion, the Court will ascertain whether the ALJ properly evaluated the evidence and applied SSRs 16-3P and 96-8p. The Court will then determine whether the ALJ built a logical bridge between the evidence and his conclusions.

### 1.  The ALJ's Determinations Regarding Claimant's Physical Limitations

#### a.  The ALJ's Decision to Discount Claimant's Subjective Allegations is Supported by Substantial Evidence

14

Claimant argues that the ALJ failed to properly evaluate Claimant's allegations because he misread the evidence. Specifically, Claimant states the ALJ improperly discounted his allegations because (1) Claimant did not have nerve root compression and (2) Claimant "repeatedly" walked with a normal gait. Claimant argues, however, that both reasons are based on incorrect readings of the evidence. This alleged mischaracterization of the evidence is reversible error because: "SSR 16-3[p] requires that the reasons given to find that a claimant's allegations lack consistency must be 'consistent with' the evidence. The ALJ's decision is not consistent with the evidence because he does not accurately and completely recognize what the imaging says" about Claimant's compressed root and failed to recognize Claimant's abnormal gait. (ECF No. 17, PageID #: 3, 5). The Court disagrees.

SSR 16-3P explains that, when determining whether a claimant is disabled, the ALJ considers all the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). An ALJ, however, "is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8.

The ALJ's determination of credibility is given "great weight" because he, unlike the Court, has the opportunity to observe the claimant's demeanor while testifying. *Jones*, 336 F.3d at 476 (citations omitted). However, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

As an initial matter, Claimant is incorrect. The ALJ did not discount Claimant's pain allegations because of his belief that Claimant did not have nerve root compression. The ALJ only discussed nerve root compression when discussing the Listings and the Court need not consider whether Claimant met the Listings because Claimant admits he did not. (ECF No. 17 at 11).

Claimant also alleges that the ALJ improperly relied on evidence of Claimant's normal gait without acknowledging evidence of an abnormal gait. Regarding Claimant allegations, the ALJ stated:

> Despite having the surgery, [Claimant] stated that he did not get any relief after his surgery and did not get any relief even after completing a course of physical therapy 3 months after surgery. Although it was noted that he was using a cane after surgery (Exhibit 33F/3), and that he used cane around the house and when he went out, the record shows that he was not always using the cane when going out. Also, a cane was never prescribed as part of his treatment regimen (Exhibits 4E, and 10F). In fact, the record has repeatedly noted that the claimant walks with a normal gait (Exhibits 6F/23, 21F/5, and 34F/6) and has had generally normal examinations (Exhibit 21F/5).

(ECF No. 13, PageID #: 90–91).

Claimant is correct. The ALJ did discredit Claimant's allegation because Claimant walked with a normal gait. Claimant is also correct that he was often observed to walk with an antalgic gait. During his physical exams, Claimant's physical impairment doctors reported that he had an antalgic gait at least 11 times and a normal gait at least 7 times. The Court notes, however, that the ALJ stated that Claimant's doctors "repeatedly noted" that Claimant walked with a normal gait, which is true. The fact that Claimant may have been observed walking with an abnormal gait more often than a normal gait does not make the ALJ's statement false. The evidence supports a finding that Claimant walked with a normal gait and the ALJ properly considered that evidence as a reason to discount Claimant's allegations. While there was evidence of both an abnormal and normal gait, it is not the Court's job to reweigh the evidence. *See Delong v. Comm'r of Soc. Sec.*, 2:18-cv-368, 2019 WL 409364, at *10 (S.D. Ohio Feb. 1, 2019) ("The ALJ's findings were within the ALJ's permissible 'zone of choice,' and the Court will not reweigh the evidence." (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009))).

Moreover, even if the ALJ should have discussed Claimant's abnormal gait in his RFC determination as Claimant alleges, an "ALJ's mistake as to a fact on the record does not justify overturning a finding that is otherwise supported by substantial evidence." *Rutherford-Glass v. Barnhart*, No. 02-2584 MAV, 2003 WL 21356016, at *19 (W.D. Tenn. June 3, 2003) (citations omitted). The Court finds that the ALJ's RFC determination was supported by substantial evidence even without evidence of a normal gait. In addition to Claimant's normal gait, the ALJ supported his RFC determination with evidence of otherwise normal findings and a lack of evidence supporting a more severe impairment. The ALJ gave additional explanation of his decision when discrediting various opinions. He stated that the totality of the evidence consisted of "predominately benign objective findings." (ECF No. 13, PageID #: 91). He disagreed with Dr.

Scheatzle's opinion that Claimant could lift 20 pounds occasionally, 10 pounds more frequently, occasionally walk one city block, occasionally stand, and frequently sit, changing positions every 30 minutes. The ALJ explained:

> [Dr. Scheatzle's] findings noted muscle spasm, decreased range of motion, reflexes that are absent heel cords, and the claimant ambulating with a straight cane, but also noted that he has normal motor strength, normal muscle bulk, normal coordination, normal sensation, and negative straight leg tests, which supports that the claimant can perform light work. Also, the opinion is not consistent with the mostly normal examination results throughout the record.

(ECF No. 13, PageID #: 92–93).

When discussing Claimant's RFC, the ALJ explicitly detailed the extensive medical evidence in record. He discussed the findings of each MRI, x-ray, and CT. After considering all the relevant evidence, the ALJ concluded that most of the evidence was "benign." For example, he noted that Dr. Scheatzle observed that Claimant had normal motor strength, normal muscle bulk, normal coordination, and normal sensation. (ECF No. 13, PageID #: 92–93). Claimant did not have acute fracture, subluxation, or evidence of dynamic instability and Claimant's doctors never prescribed a cane. (ECF No. 13, PageID #: 90).  The ALJ was also persuaded by the State agency medical consultants who similarly found Claimant capable of light work.[1]

---

[1]     Claimant also argues in passing that the ALJ improperly relied on the state agency opinions because they were given before it was apparent that Claimant needed back surgery and before most of the examination findings noting his antalgic gait. However, "[a]n ALJ can rely on a state agency physician's opinion even if they did not review the entire record, as long as the ALJ himself considered the changes in evidence." *Jenkins v. Comm'r of Soc. Sec.*, No. 1:16 CV 584, 2017 WL 1093759, at *7 (N.D. Ohio Mar. 23, 2017). Here, the ALJ explicitly acknowledged

Additionally, as required by SSR 16-3p, the ALJ specifically considered Claimant's allegations of pain. He noted that Claimant has "chronic low back pain" and that surgery did not bring him any relief. He also acknowledged that Claimant failed conservative treatment measures, including physical therapy, epidurals, medications, and a TENS unit. However, the ALJ noted that there was no acute fracture, subluxation, or evidence of dynamic instability. He also recognized that Claimant was never proscribed a cane and had generally normal examinations. The ALJ found that the medical evidence was "predominately benign" and did not support Claimant's allegations of pain. "Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record.'" *Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at *29 (N.D. Ohio Dec. 4, 2019) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Thus, the ALJ was free to discredit Claimant's allegations of severity based on the absence of more severe objective medical evidence. The Court is, therefore, satisfied that the ALJ's decision was supported by substantial evidence.

### b.  The ALJ Properly Followed 96-8p when determining Claimant's RFC

Claimant alleges that the ALJ did not reconcile inconsistencies in the evidence in accordance with SSR 96-8p. Claimant suggests that "[had] the ALJ completely and accurately reviewed the [record], the result of this case could have been different." (ECF No. 14 at 20). The Court disagrees. SSR 96-8p requires that when symptoms, such as pain, are alleged, the RFC

---

Claimant's surgery and all of the medical evidence that was provided after the state agency consultants reviewed the decision. Thus, it was not error to rely on their opinions.

assessment must: (1) "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain;" (2) "[i]nclude a resolution of any inconsistencies in the evidence as a whole;" and (3) "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." SSR 96-8p, 1996 WL 374184, at *7. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

First, Claimant argues that because the ALJ incorrectly concluded that Claimant does not have nerve root compression, he improperly failed to take Claimant's nerve root compression into account when determining Claimant's RFC. However, Claimant does not cite to anything that shows Claimant actually has nerve root compression. He instead points to three MRIs, one of which indicated severe neural foraminal narrowing. Claimant asserts that severe neural foraminal narrowing or stenosis is associated with nerve root compression. Claimant also states that his surgery was for "foraminotomy decompressing the L3, L4 nerve roots on the left," implying that his nerve root was compressed. (ECF No. 13, PageID #: 549). Neither piece of evidence demonstrates nerve root compression. The healthline article that Claimant cites to does not state that severe neural foraminal stenosis is associated with nerve root compression, but merely indicates that severe cases of neural foraminal stenosis can lead to nerve root compression. A record of procedure that states foraminotomy decompressing of the roots was peformed is not enough. Claimant did not provide any evidence of a doctor noting nerve root compression or any other kind of conclusive evidence. Claimant even states that the evidence he provided "shows that he has or *may* have" nerve root compression, indicating that Claimant is not even certain that he had nerve root compression. (ECF No. 14 at 19) (emphasis added). This is not enough. It was

20

Claimant's burden to prove his impairments and he did not meet that burden. *See Libertore v. Comm'r of Soc. Sec.*, No. 5:11 CV 1245, 2012 WL 3815622, at *16 (N.D. Ohio July 26, 2012) ("[I]t is a claimant's burden to establish medical evidence of an impairment." (citations omitted)). Thus, the ALJ did not err in concluding that Claimant did not have nerve root compression and was not required to take nerve root compression into account when determining the RFC.

Additionally, the ALJ did take inconsistencies in the record into account. "An ALJ 'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.' His factual findings as a whole must show only that he implicitly resolved the conflicts in the evidence." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014) (citations omitted). Notably, the ALJ stated that the medical evidence was "predominately" benign and "mostly" normal. This characterization suggests that the ALJ recognized that there was some medical evidence that was not benign or normal. He also stated that Claimant was "repeatedly" noted to walk with a normal gait. He did not say that he was generally noted to walk with a normal gait or that he always walked with a normal gait. This indicates that the ALJ acknowledged that Claimant also walked with an abnormal gait at times and had some abnormal findings. The ALJ was not required to address every piece of evidence Claimant submitted. The Court is, therefore, satisfied that the ALJ considered the evidence supporting Claimant's allegations but ultimately determined that the bulk of the evidence weighed against Claimant.

### c.  The ALJ built a logical bridge when determining Claimant's RFC

Claimant argues that the "ALJ's decision should be remanded because an accurate and logical bridge between the evidence and the conclusions was not developed, the ALJ's reasoning was not validly articulated, [and] his decision does not set forth a logical explanation." (ECF No.

14 at 21). "[T]his Court cannot uphold an ALJ's decision, even if 'there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (alteration in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

In making his RFC determination, the ALJ provided a sufficient logical bridge for the Court to understand his decision. Most of Claimant's argument relies on his assertion that the ALJ mischaracterized the evidence. However, as discussed above, the Court disagrees. While the ALJ recognized Claimant's pain, the ALJ reasonably concluded that the objective medical evidence did not confirm such severe impairments. His decision relied on the fact that the medical record was predominately benign and the medical examinations were mostly normal. As discussed above, the ALJ properly weighed the evidence and made a reasonable conclusion that was properly articulated and supported by substantial evidence. The Court, therefore, finds no error in the ALJ's RFC regarding Claimant's physical impairments.

### 2. The ALJ's Determinations Regarding Claimant's Mental Impairments

#### a. The ALJ's Decision to Discount Claimant's Subjective Allegations is Supported by Substantial Evidence

Claimant alleges the ALJ discredited Claimant regarding his mental impairments because: (1) he repeatedly admitted that medications and counseling sessions helped control his mental health issues and (2) the various mental status checks throughout the record note that Claimant was "always" pleasant, has an appropriate affect, and was oriented. Claimant suggests that the ALJ's reasoning was improper because (1) it was wrong to rely on Claimant's improvement as a reason to discredit him and (2) he was not always observed as pleasant. The Court will address the first reason in this section and the second reason in the next.

First, the ALJ properly considered Claimant's statements regarding his effective treatment. SSR 16-3p instructs the ALJ to consider the effectiveness of the claimant's treatment and medication. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). The fact that Claimant's mental impairments were stabilized with treatment was a proper reason to discredit Claimant's allegations. *Dunn v. Comm'r of Soc. Sec.*, No. 1:15-cv-176, 2016 WL 4194131, at *9–10 (S.D. Ohio July 15, 2016) (considering effective treatment a sufficient reason to discredit the claimant's allegations of pain). The Court, therefore, finds that the ALJ did not error by considering Claimant's treatment.

### b. The ALJ Properly Applied SSR 96-8p When Determining Claimant's RFC

Second, Claimant asserts the ALJ incorrectly stated that Claimant "always" presented as pleasant. Instead, Claimant suggests that he was observed to be aggressive, hostile, and preoccupied on many occasions. Claimant alleges that this misrepresentation violates SSR 96-8p because the ALJ did not reconcile material inconsistencies. This is reversible error according to Claimant because "had the ALJ correctly noticed this evidence he may have found that [Claimant's] mood would lead him to be off task, absent, or requiring too many breaks in a competitive work setting." (ECF No. 14 at 22–23).

The Court finds this assertion meritless. Claimant does not explain how the ALJ's incorrect statement that Claimant was "always" pleasant is a material inconsistency, as required by SSR 96-8p. *See* SSR 96-8p, 1996 WL 374184, at *7 ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."). While it is true that Claimant was observed to be hostile, aggressive, and preoccupied on a few occasions, it does not follow the presence of these characteristics would affect the ALJ's RFC decision. Claimant provides no medical evidence or caselaw to support his conclusion that

23

hostility, aggression, and preoccupation lead to being off task, absent, or requiring breaks. He does

not cite a single case or medical opinion to support his argument and the Court finds none.

Claimant also alleges that the ALJ did not properly articulate his reasoning for determining

Claimant's mental impairments were not disabling or reconcile the evidence that demonstrated

that Claimant's medication was not working, and he was not stable. The Commissioner responds

that the ALJ properly considered the evidence supporting Claimant's allegations. The Court

agrees. In determining Claimant's RFC, the ALJ stated:

> The claimant resides with his girlfriend in his grandmother's basement. He helps take care of his grandmother. He has a great relationship with his grandmother and a good, but strained, relationship with his mother. His father is deceased and he has not seen his adult daughter for several years. He has a dog that he takes care of. He does his own cleaning (vacuum, dust, put away dishes, etc.). He does some weeding of the yard. He goes grocery shopping. He cooks. He handles his own money. He does not need any assistance with self-care. The claimant stated he watches television for four or five hours a day. He enjoys the National Geographic channel. However, he has reported [] having poor concentration. He eats about two meals a day. His girlfriend does a lot of the activities around the house. He does not talk about having friends other than his girlfriend. He goes to the park. At the consultative psychological evaluation, he was assessed as having intellectual functioning in the average range. Although the claimant is alleging that he cannot work due to disability, he has admitted that he turned down a small job opportunity because he felt uncomfortable with one of the prospective co-workers. Interestingly, he admitted that while trying to get SSI, he was also trying to figure out what he wants to do for work. He explained that he had been offered a landscaping job, but was unsure whether he wanted to do it since he did not want to injure his back any further and feels that landscaping work would potentially do that. Yet, he discussed other job options, but was concerned about applying for those jobs without at least having a GED (Hearing Testimony, and Exhibits 4E, 9F, 11F, 25F, and 29F).
> . . .
>
> [T]hroughout this decision, it is shown that the claimant has been able to think, act, and communicate in his own self-interest in order to adapt to various changes and demands in his environment. For example, he reported that he has sought out the support of family

24

> members, such as his grandmother, when he needed help with his
> basic needs, and the record shows that he has sought out both
> medical treatment and mental health treatment whenever he thought
> it was necessary and has been able to report his physical/mental
> symptoms/difficulties to providers in order to obtain such treatment.
>
> . . .
>
> Despite continuing to allege these symptoms, he has repeatedly
> admitted that the medications and counseling sessions help control
> his mental health issues (Exhibits 4E, and 10F/1) and has indicated
> stability in his mood (Exhibit 11F/20). Furthermore, the various
> mental status checks throughout the record note that he is always
> pleasant, has an appropriate affect, and is oriented.

(ECF No. 13, PageID #: 89–91). The ALJ, when discussing why he did not find Dr. Benson-

Blankenship's opinion persuasive, also explained:

> The opinion is not supported by the consultant's belief of the
> claimant having problems with his "alcohol recovery" given that the
> claimant had already been sober for over 4 months when this opinion
> was provided and it was noted that the claimant was making great
> progress, was attending AA meetings, and had a sponsor. Also, the
> opinion is not consistent with the claimant's lifestyle, which is
> documented throughout the report, as the opinion overstates the
> claimant's limitations given that he has a long-term girlfriend whom
> he lives with in his grandmother's basement, is able to live with his
> grandmother who is 89 years old, has a driver's license, is able to
> perform self-care tasks, clean, grocery shop, cook, handle his own
> money, and take care of a dog.

(ECF No. 13, PageID #: 92).

The Court finds that the ALJ properly considered and discredited Claimant's allegations.

For example, the ALJ noted that Claimant had poor concentration, had no friends other than his

girlfriend, and that his girlfriend did a lot of the household activities. He also recognized that

Claimant reported being nervous, shaking a lot, and experiencing heart rate increases. (ECF No.

13, PageID #: 91). However, the ALJ weighed the conflicting evidence—Claimant's statements

about treatment being successful, his daily activities and ability to self-care, and a generally

pleasant mood and affect—and made a reasonable conclusion regarding Claimant's required limitations. T*See Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at *29 (N.D. Ohio Dec. 4, 2019) ("Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record.'" (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997))). The Court is, thus, satisfied that the ALJ considered the conflicting evidence and made a reasonable determination.

### c. The ALJ Built a Logical Bridge When Determining Claimant's RFC

Finally, Claimant argues that the ALJ did not build an adequate bridge between his conclusions and the medical evidence. The Court, however, fully understands how the ALJ made his determination. The ALJ found that, despite some evidence of anxiety, Claimant's impairments did not rise to the level of severity alleged. In making that finding, the ALJ considered the fact that Claimant was generally pleasant, was able to perform self-care, was successful with treatment, and had indicated stability in his mood. Accordingly, the Court is satisfied that ALJ built an adequate logical bridge for the Court to understand his reasoning and his decision was supported by substantial evidence.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: October 12, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).